**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

TERRANCE HAYNES,

    Plaintiff,

v.

    Case No. 3:22-cv-1104-TJC-MCR

H.D. GATOR DELOACH, in his
Official Capacity as Sheriff, Putnam
County, Florida,

    Defendant.

## **O R D E R**

Plaintiff Terrance Haynes has sued his former employer, alleging his termination was improper. Doc. 7. Haynes, who is African American, has five claims: Count I is race discrimination under the Florida Civil Rights Act of 1992 (FCRA)[1], Count II is race discrimination under Title VII of the Civil Rights Act of 1964 (Title VII), Count III is interference with his rights under the Family and Medical Leave Act of 1993 (FMLA), Count IV is FMLA retaliation, and Count V is retaliation in violation of 42 U.S.C. §1981. Defendant Putnam

---

[1] FCRA claims are analyzed under the same framework as Title VII. See, e.g., Jones v. United Space Alliance, L.L.C., 494 F.3d 1306, 1310 (11th Cir. 2007) (noting Florida courts apply Title VII caselaw when interpreting the FCRA); see also Johnson v. Miami-Dade Cnty., 948 F.3d 1318, 1325 (11th Cir. 2020) (applying Title VII race discrimination claim analysis to FCRA).

County Sheriff H.D. "Gator" DeLoach has filed a Motion for Summary Judgment, which has been fully briefed. Docs. 24, 29, and 33.

## I. FACTS

A. Haynes' 2015-17 Employment[2]

Haynes began his employment with Putnam County as a Corrections Deputy for the jail in 2015. Doc. 25-1 (Haynes Dep.) at 10-11[3]. In 2017, Haynes complained he did not want to work with Corporal Breckenridge because Breckenridge mistreated Black inmates, including using racial slurs.[4] Doc. 25-1 (Haynes Dep.) at 43-45, 57-58. Haynes was moved to a different shift and efforts were made to avoid having Haynes and Breckenridge work together.[5]

---

[2] The Parties argue whether any claims from the first employment period are timely. Compare Doc. 24 at 14-15, with Doc. 29 at 11-12. Both Parties, however, argue events in the first employment period are relevant to events in the second employment period. See Doc. 25-2 at 41; Doc. 29 at 11-12. Evidence related to Haynes' first period of employment and termination can be considered even if a claim arising from that employment and termination are out of time. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002) (noting an employee is not barred "from using [] prior bad acts as background evidence in support of a timely claim."). For summary judgment, the Court has considered evidence from the first employment period but has not decided that any claims related to the 2015-17 employment period are actionable.

[3] Unless otherwise indicated, deposition references are to the deposition page number (which may be different than the ECF page number).

[4] The Parties dispute whether Haynes' complaint about Breckenridge alleged Breckenridge engaged in any racially discriminatory behavior. Doc. 25-3 (Harrell Dep.) at 6-8. Breckenridge denies the allegations. Doc. 25-6 (Breckenridge Dep.) at 13.

[5] Haynes claims Lt. Harrell promised Haynes would not have to work with Breckenridge. See Doc. 25-1 (Haynes Dep.) at 48, 57. Harrell testified he

See Doc. 25-1 (Haynes Dep.) at 48, 57. Several months after his complaint about Breckenridge, Haynes was scheduled to work with Breckenridge, Haynes refused, and was ultimately terminated for insubordination. See Doc. 25-1 (Haynes Dep.) at 53-55. Part of Haynes' claim for unemployment stated Breckenridge was a racist. Doc. 30-18. There is no evidence an investigation was done – either based on Haynes' initial complaint about Breckenridge or the allegation in Haynes' unemployment claim.[6] See Doc. 25-3 (Harrell Dep.) at 36; Doc. 25-2 (DeLoach Dep.) at 5-6, 15.

    B. Haynes' 2018-21 Employment

In 2018, the Sheriff's office reached out to Haynes and rehired him. Doc. 25-1 (Haynes Dep.) at 42, 72-73; Doc. 30-21. On September 14, 2021, Haynes was working with two other officers: Greg Session, African American male; and Isaiah Decent,[7] bi-racial (and light skinned) male. Doc. 25-1 (Haynes Dep.) at 60-62, 67. During the shift, Decent failed to properly perform an inmate count and the recount, resulting in a required master count. See Doc. 25-7 (Decent

---

told Haynes he might have to work with Breckenridge. Doc. 25-3 (Harrell Dep.) at 7-8.

[6] There was a 2014 investigation about Breckenridge and a KKK flyer. Doc. 25-6 (Breckenridge Dep.) at 11-12. Haynes was told there would be an investigation about Breckenridge kicking an inmate but is not aware of any investigation or outcome. Doc. 25-1 (Haynes Dep.) at 43, 131.

[7] Decent's last name is sometimes misspelled as Descent. Compare Doc. 25–7 at 4, with Doc. 25-1 (Haynes Dep.) at 60. Similarly, Session is sometimes incorrectly referenced as Sessions. Compare Doc. 25-2 at 6 with Doc. 30-57 at 4.

3

Dep.) at 5-6, 10-18; Doc. 25-1 (Haynes Dep.) at 100-01; Doc. 24 at 7. Breckenridge, reviewed video, observed other procedural violations, and requested an internal investigation of all three officers.[8] Doc. 30-1.

Haynes was notified of the investigation on October 15, 2021. Doc. 30-28. The same day, Haynes provided a letter to the chain of command complaining of a "hostile work environment," alleged his duties being were scrutinized, and requested the letter be part of his personnel file.[9] See Doc. 25-1 (Haynes Dep.) at 210 (ECF). Major Greenwood responded in writing, telling Haynes the letter would be placed in the investigation file and was not appropriate for his personnel file. Doc. 30-2. There is no evidence an investigation was done into the hostile work environment allegation. See Doc. 25-2 (DeLoach Dep.) at 18-20; Doc. 25-8 (Silva Dep.) at 40-41. Major Greenwood did not do an investigation or follow up about the hostile work environment allegation because Haynes did not specifically mention race or give any examples indicating race was part of the problem. Doc. 30-43 (Greenwood Dep.) at 9-10.

A separate investigation was done for each officer. Doc. 24 at 8; see Docs.

---

[8] Major Greenwood formally requested investigations of Decent, Session, and Haynes on October 8, 2021. Doc. 30-27.

[9] The letter from Haynes is referenced as Exhibit 6, but the record does not contain a letter marked Exhibit 6. The description of the exhibit, including being misdated November 15, 2021, matches Doc. 25-1 (Haynes Dep.) at 210 (ECF). See e.g. Doc. 25-2 (DeLoach Dep.) at 18-19. The Court has presumed Doc. 25-1 at 210 is the same as Exhibit 6.

25-16, 25-17, and 25-18. The disciplinary recommendation for each investigation, dated October 27, 2021, was based on finding policy violations occurred.[10] See Docs. 25-16, 25-17, and 25-18. Haynes denies admitting to all the policy violations but did admit to some of the violations and claimed they were routine (often because of limited staffing), and other employees engaged in similar behavior without any discipline.[11] Doc. 25-1 (Haynes Dep.) at 102-07. Haynes said Decent was responsible for the head count that day and neither Haynes nor Session were involved.[12] Doc. 25-1 (Haynes Dep.) at 100-01. Two

---

[10] The violations cited for Session and Decent are the same, with one additional violation for Haynes. Compare Doc. 25-16, with Docs. 25-17 and 25-18; see Doc. 24 at 9. The disciplinary recommendations for all three were categorized as level 3 violations. Docs. 24-16, 25-17, and 25-18.

[11] Haynes suggested Bush as a witness who could support his claims about typical process, but the investigator, Zagar, did not interview Bush because she was not a witness to the actual events on September 14, 2021, nor did he investigate if other violations were routine as Haynes alleged, or review video about how others handled similar situations. See Doc. 25-4 (Zagar Dep.) at 14-16, 29 (all references to Zagar's deposition are ECF page numbers). Zagar was asked if he investigated the "broader picture" and testified he just "investigated what [he] was told to investigate" and "[w]hat other people did was not part of my investigation." Doc. 25-4 (Zagar Dep.) at 31, 39. Breckenridge testified he has reviewed other video and not found similar violations and was not aware of the alleged miscount by Bishop and Walker. See Doc. 25-6 (Breckenridge Dep.) at 15, 21; see infra p. 6. The record included evidence that miscounts occurred with some frequency but did not result in discipline, much less termination, and there were instances when officers did counts alone. Doc. 30-52 (Norton Statement) at 12, 14.

[12] The Sheriff's position is that all three officers shared responsibility to perform the inmate count and each shared responsibility when it was not done correctly. See Doc. 25-6 (Breckenridge Dep.) at 29, 36-39; Doc. 24 at 7.

5

white officers, Bishop and Walker, were allegedly involved in a miscount on October 29, 2021, but no investigation was done. Doc. 30-56 (Bush statement) at 38-41; Doc. 25-1 (Haynes Dep.) at 135-36; see Doc. 25-2 (DeLoach Dep.) at 7.

Captain Silva reviewed the investigation findings and was responsible to make discipline recommendations, which are reviewed by the chain of command. See Doc. 25-8 (Silva Dep.) at 33-35. The Sheriff has final authority regarding discipline, including being able to make changes to recommended discipline. See Doc. 25-2 (DeLoach Dep.) at 39-41. Officers are notified of the discipline recommendation (before a final decision by the Sheriff) and may respond in writing. Doc. 30-6. Haynes was notified of the discipline recommendation on November 8, 2021, and responded in writing. Docs. 30-6, 30-7. Haynes' response mentioned that he and "several co-coworkers have been singled out by Lieutenant Breckenridge." Doc. 30-7.

Session was already on probation and was terminated (the recommended discipline). Doc. 30-44 (Wells Dep.) at 62-63; see Doc. 25-18. For Decent, the recommended discipline was a 24-hour suspension, written reprimand, and one year of probation. Doc. 25-17. Decent's final discipline (change recommended by Chief of Staff and approved by Sheriff) was a written reprimand, one year of probation, but only 12 hours of suspension. Doc. 25-17. For Haynes, the recommended discipline was a 36-hour suspension, written reprimand, and one year of probation. Doc. 25-16. The Sheriff disagreed with the recommendation,

6

by his own admission "deviated from the policy", and terminated Haynes instead of approving the recommended discipline. Doc. 25-16; Doc. 25-2 (DeLoach Dep.) at 42. The Sheriff did not fire Decent because he thought Decent was young and impressionable and did not have prior issues like Haynes. See Doc. 25-2 (DeLoach Dep.) at 41.

During his second period of employment, Haynes received positive reviews and was not involved in any discipline before the investigation into September 14, 2021. See Doc. 25-1 (Haynes Dep.) at 78-79; Doc. 30-23; Doc. 30-31. The Sheriff is not aware of any investigation into Breckenridge about racial remarks towards inmates.[13] Doc. 25-2 (DeLoach Dep.) at 5, 15.

C. FMLA

Haynes' requested 12 weeks of FMLA leave on October 27, 2021, because his son had emergency surgery — the same day as the disciplinary recommendation. Doc. 30-4. The leave was conditionally approved, contingent on receiving medical certification, which was faxed to the Sheriff's office on November 10, 2021 — the same day Haynes was notified of his termination. See Docs. 30-4, 30-5.

---

[13] Nor is there other evidence about an investigation regarding Breckenridge, except for the 2014 investigation, which was before Haynes was employed. See Doc. 25-3 (Harrell Dep.) at 36; Doc. 25-4 (Zagar Dep.) at 32-33; Doc. 25-6 (Breckenridge Dep.) at 11-14, 23.

## II. ANALYSIS

A. Standard

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Further, the Court has construed evidence in the light most favorable to Haynes. See Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1098 (11th Cir. 2014).

B. Haynes' Burden for Race Discrimination and FMLA Retaliation (Counts I, II, and IV)

Without direct evidence of either race discrimination or FMLA retaliation, such claims are typically analyzed under the McDonnell Douglas burden shifting framework. See Lapham v. Walgreen Co., 88 F.4th 879, 889 (11th Cir. 2023) (burden shifting for FMLA). Even so, the McDonnell Douglas paradigm does not change the ultimate question of whether there is enough evidence to establish illegal discrimination or retaliation and is not the only way a plaintiff can defeat summary judgment. See Tynes v. Fla. Dept. of Juv. Just., 88 F.4th 939, 941 (11th Cir. 2023). Summary judgment is not proper so long as a plaintiff presents a "convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." Id. at 946 (cleaned up).

8

C. <u>Haynes' Race Discrimination Claims (Counts I and II)</u>

The Sheriff's argument about whether Haynes has identified a proper comparator, needed for a prima facie case under <u>McDonnell Douglas</u>, is misplaced. <u>Id.</u> The allegations of misconduct for Decent and Haynes are nearly identical, but even if Decent is not a similarly situated comparator, the similarity in alleged misconduct between Haynes and Decent (as well as possible others, such as Bishop and Walker) and difference in discipline, contributes to a convincing mosaic of circumstantial evidence. In deciding to terminate Haynes, the Sheriff deviated from policy and rejected the recommended discipline. In contrast, the Sheriff approved lower than recommended discipline for Decent, who is light skinned and mixed race, which did not include termination. The Sheriff did not terminate Decent because he considered Decent to be young, impressionable, and without a history like Haynes, even though Haynes had been re-employed for three years with no discipline and positive performance reviews. While the 2021 investigation was underway, Haynes complained of a hostile work environment,[14] having his work scrutinized, and being treated differently than others involved in similar infractions; but those complaints were not investigated. A fact finder might infer race discrimination based on the difference in discipline and lack of

---

[14] The record has references to a similar complaint from Session, but this was not part of the record. <u>See</u> Doc. 30-57 (Session statement) at 42-43.

9

investigation into workplace complaints, and therefore summary judgment should not be granted on the race discrimination claims.

### D. Haynes' FMLA Retaliation Claim (Count IV)

For the FMLA retaliation claim, Haynes argues the close temporal proximity is sufficient to show a causal connection between his protected activity and the adverse employment action. Jones v. Gulf Coast Health Care of Del., 854 F.3d 1261, 1271-72 (11th Cir. 2017). Haynes was terminated two weeks after his initial FMLA request and the same day his FMLA medical certification was provided. The Sheriff argues close temporal proximity is not enough to show causation when an adverse employment action is already contemplated (or even decided) before the protected activity occurs. Doc. 24 at 22-23.

The Sheriff's cases are distinguishable. Here, the investigation started before the FMLA request, but discipline recommendations were not made until the same day as the FMLA request. Moreover, the discipline deviated downward for Decent but upward for Haynes and the Sheriff's decision to terminate Haynes was the same day Haynes' medical certification was received. In short, the record does not show that the "writing was on the wall" regarding Haynes' termination before his protected activity, as the Sheriff argued, only that an investigation was underway which could result in discipline. See Doc. 24 at 23.

10

The Sheriff also argues that Haynes has not established the Sheriff knew of his FMLA request and lack of knowledge by the decision maker can defeat an inference of causal connection solely based on temporal proximity. Close temporal proximity alone is not enough if there is <u>unrebutted</u> evidence the decision maker was unaware of the protected activity. <u>See</u> <u>Hurlbert v. St. Mary's Health Care Sys., Inc.</u>, 439 F.3d 1286, 1298 (11th Cir. 2006). Here, however the record is unclear about the Sheriff's knowledge but does establish others involved in recommending Haynes' discipline were aware of the leave request. Summary judgment is not appropriate. <u>See</u> <u>id.</u> (noting the jury could infer the decision maker had knowledge of the leave request because others involved in the decision were aware of the leave request).

E. <u>Haynes' FMLA Interference Claim (Count III)</u>

FMLA provides eligible employees 12 weeks of job-protected leave for qualifying reasons. 29 U.S.C. § 2612(a)(1). A FMLA interference claim requires proof an employee was denied a benefit to which they were entitled. <u>Hurlbert</u>, 439 F.3d at 1293. Haynes requested twelve weeks of FMLA and was conditionally approved but was prevented from using all available FMLA benefits because of his termination.

Employer motive is typically not relevant in a FMLA interference claim, but when the employee is denied rights due to termination, an employer may defend the claim by arguing the termination was for legitimate reasons. <u>See</u>

11

Lapham v. Walgreen Co., 88 F.4th 879, 896 (11th Cir. 2023). Because Haynes has sufficiently cast doubt on the reason for his termination, summary judgment on his FMLA interference claim is not warranted.

    F.  Haynes' §1981 Retaliation Claim (Count V)

A prima facie case of retaliation under 42 U.S.C. §1981 requires (1) protected activity, (2) a materially adverse action, and (3) a causal connection between the two. Kidd v. Mando Am. Corp., 731 F.3d 1196, 1211 (11th Cir. 2013). The Sheriff argues Hayne is unable to establish a prima facie case because his November 9, 2021, rebuttal to the recommended discipline is not reasonably interpreted as protected activity, and fails for lack of causation. Doc. 24 at 21-23. In contrast, Haynes argues he raised multiple concerns about his employment that are reasonably viewed as racial discrimination complaints, including concerns in 2017 of racial animus from Breckenridge towards inmates and his 2021 allegation of a hostile work environment. Doc. 29 at 16-17.

While the Court is dubious about the §1981 claim, Haynes' termination shortly after complaining of a hostile work environment and being singled out, is sufficient to create a fact question, and the claim can proceed.[15]

---

[15] The Court notes this claim is pled in the alternative. Doc. 7, ¶67.

Accordingly, it is hereby

**ORDERED:**

1. Defendant's Motion for Summary Judgment, Doc. 24, is **DENIED.**

2. No later than **October 9, 2024**, the Parties will file a joint report establishing a date for a renewed mediation effort, and proposed dates for a final pretrial conference and trial. The Court will then issue a scheduling order.

**DONE AND ORDERED** in Jacksonville, Florida the 18th day of September, 2024.



ddw
Copies:

Counsel of record

13